**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| BENNY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-CV-00194 SPM |
| | ) | |
| JOE Z. SATTERFIELD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**OPINION, MEMORANDUM AND ORDER**</u>

This matter is before the Court on the motion of plaintiff Benny Johnson, an inmate at Eastern Reception Diagnostic and Correctional Center (ERDCC), for leave to commence this civil action without prepaying fees or costs. [ECF No. 2] The Court will grant the motion and assess an initial partial filing fee of $37.58. Furthermore, after reviewing the pleadings in this matter, the Court will dismiss this action for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10, until the filing fee is fully paid. *Id.*

A review of plaintiff's account from the relevant six-month period indicates an average monthly deposit of $187.91 and an average monthly balance of $155.71. Plaintiff has insufficient funds to pay the entire filing fee. Accordingly, the Court will assess an initial partial filing fee of $37.58, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must assume the veracity of well-pleaded facts but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even self-represented complaints must

allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### State Court Background

A review of Missouri Case.net[1] indicates that on July 6, 2017, plaintiff was charged by criminal complaint with felony driving while intoxicated, three counts of involuntary manslaughter in the first degree and felony leaving the scene of a motor vehicle accident. *See State v. Johnson*, No. 17DU-CR00941 (35th Jud. Cir., Dunklin County Court).[2]

The probable cause statement completed by Trooper T. Watson, with the Missouri State Highway Patrol, on July 5, 2017, stated as follows:

> On July 4, 2017, at 2217 hours, I arrived on the scene of a motor vehicle crash on Route MM, north of Dunklin County Road 102. When I arrived, I observed a black Chrysler Town and Country van on the northbound shoulder and a white 2015 Chevrolet Cruz sitting on the same shoulder behind it. Both vehicles were damaged. Another vehicle involved that left the scene of the crash was a black 2010 GMC Sierra. The GMC was located approximately a quarter of a mile north of the crash scene and was stuck in a muddy field. The driver of the GMC Sierra was Benny Johnson, who was traveling north, struck the Chevrolet Cruz, and killed one of its occupants, J.S.V. DOB 07/04/2015. Johnson continued north and struck and killed 2 pedestrians T.D.S. DOB 12/13/1984 and P.S.S. DOB 03/28/2007. The Chrysler Van was struck by debris set in motion by Johnson's vehicle. Johnson continued driving north, traveled around a right hand curve and as he began traveling around a left hand curve, he traveled off the right side of the roadway, into an open field and became stuck in the mud. Johnson was detained and brought back to the scene by a Dunklin County Deputy.

---

[1] Plaintiff's underlying state court cases were reviewed on Case.net, Missouri's online case management system. The Court takes judicial notice of these public state records. *See Levy v. Ohl,* 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n. 2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records").

[2] Plaintiff was arrested on July 5, 2017, at Dexter Hospital. No bond was allowed.

I made contact with Johnson and could smell a strong odor of intoxicants coming from him. Johnson's eyes were bloodshot and glassy and his speech was slurred. I asked Johnson if he would take a portable breath test and he refused. I submitted Johnson to field sobriety tests. The Horizontal Gaze Nystagmus test revealed a lack of smooth pursuit, an onset prior to 45 degrees and distinct nystagmus at maximum deviation in both eyes. Johnson's eyes also revealed vertical nystagmus. During the One-Leg-Stand test, Johnson swayed while balancing, using his arms for balance, hopped and put his right foot down. Johnson could not maintain a heel to toe stance while listening to the instruction to the Walk and Turn test. During the test, Johnson stopped while walking to steady himself did not touch heel to toe, lost his balance while walking, and used his arms for balance. Johnson stated he obtained a college bachelor's degree, but could not recite the alphabet correctly. Johnson also could not count backwards from 99 to 77 correctly. Johnson was obviously intoxicated. I arrested Johnson for Driving While Intoxicated and read him the Missouri Implied Consent law, which he stated he understood but refused to give a blood sample.

An Information was filed on July 11, 2017, charging plaintiff with the same charge as that in the criminal complaint. *See State v. Johnson*, No. 17DU-CR00941-01 (35th Jud. Cir., Dunklin County Court). Plaintiff was also charged as a habitual offender.

The matter was transferred to Stoddard County on or about April 19, 2019. *See State v. Johnson*, No. 17DU-CR00941-04 (35th Jud. Cir., Stoddard County Court). A Substitute Information was filed on October 8, 2021, by prosecutor Nicholas Jain, charging plaintiff with three counts of felony driving while intoxicated and causing the death of another, leaving the scene of an accident and causing physical injury to another and leaving the scene of an accident and causing property damage exceeding $1,000. *Id.* Plaintiff was represented by attorney John McMullan.

After a three-day jury trial on the matter in front of Judge Joe Satterfield, from October 18, 2021, through October 20, 2021, plaintiff was found guilty on all charges and he was sentenced on December 15, 2021, to a total term of imprisonment of thirty-eight (38) years in the Missouri Department of Corrections. *See State v. Johnson, No.* 17DU-CR00941-04 (35th Jud. Cir., Stoddard County Court).

4

Plaintiff appealed his conviction to the Missouri Court of Appeals, and the sentence was affirmed on August 4, 2023. *See State v. Johnson,* No. SD37373 (Mo.Ct.App. 2023). Plaintiff filed a post-conviction motion to vacate his conviction pursuant to Missouri Rule 29.15 on May 12, 2023. *See Johnson v. State*, No. 22SD-CC00020 (35th Jud. Cir., Dunklin County Court). The matter is currently under advisement.

## The Complaint

Plaintiff Benny Johnson, an inmate at ERDCC, is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983 against twenty-four (24) defendants: (1) Joe Satterfield (Judge); (2) Robert Mayer (Judge); (3) John Speilman (Judge); (4) Nicholas Jail (Prosecutor); (5) Russell Oliver (Prosecutor); (6) Tim Pulley (Police Officer); (7) Jeremy Jones (Criminalist); (8) Todd Watson (Police Officer); (9) Aaron Grainger (Police Officer); (10) Josh Roberts (City of Bernie Police Officer); (11) John McMullan (Plaintiff's Criminal Attorney); (12) James Smith[3]; (13) Justin Claibourn (Prosecution Witness); (14) Nicole Green (Dunklin County Jail Administrator); (15) Ashley Graham (Nurse, Dunklin County Jail); (16) Dewayne Rhody (Medical Lab Technician); (17) Kelli Asher (Juror); (18) June Robinson (Prosecution Witness); (19) Tayhlar Santana (Prosecution Witness); (20) Brant Bristow (Prosecution Witness); (21) Jesse Curtis (Prosecution Witness); (22) Brian Wicker (Tow Truck Driver); (23) Bob Holder (Sheriff, Dunklin County); and (24) Carl Heifner (Sheriff, Stoddard County). [ECF No. 1]. Plaintiff is pursuing claims for "corruption" and "cruel and unusual punishment," as well as alleged violations

---

[3]Plaintiff states that defendant James Smith is with the Missouri Courts Commission on Retirement, Discipline and Removal.

of his Eighth and Fourteenth Amendment rights.[4] *Id*. Plaintiff is additionally pursuing claims under the Missouri State Constitution.

Plaintiff's claims in this action are conclusory and lack factual support. Additionally, he has attempted to assert multiple claims against multiple defendants in direct contravention of the Federal joinder rules. *See* Fed. R. Civ. P. 18 and 20. Nevertheless, the Court will do its best to recount plaintiff's claims for relief in this matter.

Plaintiff allegations in his complaint appear to relate to four issues: (1) purported civil rights violations relating to his arrest in July of 2017; (2) purported civil rights violations relating to his criminal prosecution in Dunklin and Stoddard County Courts between July of 2017 and October 2021; (3) claimed civil rights violations relating to his incarceration in both the Dunklin County and the Stoddard County Jails; (4) and purported allegations of deliberate indifference to his serious medical needs during his incarceration at both the Dunklin County and Stoddard County Jails.

### A. Allegations Relating to Plaintiff's Arrest in July of 2017

Plaintiff states that at the scene of the accident in July of 2017, he was questioned prior to receiving his *Miranda* rights, by Missouri State Police Trooper Todd Watson and Officer Josh Roberts from the City of Bernie, Missouri.[5] Plaintiff complains that Officer Roberts acted outside his jurisdiction, while Trooper Watson disoriented him by moving him from vehicle to vehicle after the accident prior to both questioning him and then performing a field sobriety test on him.

---

[4]Plaintiff additionally claims that he is pursuing violations of his First and Sixth Amendment rights. However, he has not provided indications of what those claims are in his complaint.

[5]Plaintiff admits that Judge Satterfield reviewed this issue in his criminal action, as well as whether he had been legally under arrest prior to speaking to officers at the scene of the accident.

Plaintiff states that "all this movement without regard to my injuries or how much more damage he could have caused with all this movement" violated his Constitutional rights.

Plaintiff states that even though he was purportedly arrested at the scene of the accident, he was again arrested by an unnamed person at the hospital where he was taken for treatment and bloodwork. He claims he was physically and verbally abused by an unnamed Missouri State Police Trooper at the hospital when he was placed in handcuffs. He was allegedly "yanked around extremely hard, nearly causing [him] to fall."[6] Plaintiff believes that this unnamed officer was prejudiced against him, and he purportedly told plaintiff that he hoped he never saw a free day again. Plaintiff claims that this "abusive Trooper" transported him from the hospital to the "Dunklin/Stoddard County line" and to the custody of Trooper Watson who then took him to the Dunklin County Jail. Plaintiff complains that Trooper Watson questioned him during the drive to the Jail. Plaintiff claims Trooper Watson took him to the booking area at Dunklin County Jail and again read him his rights. Plaintiff complains that Trooper Watson tried to make it seem like he was first arrested at the scene of the accident, then at the hospital, but he was really arrested at the Dunklin County Jail. As noted above, this matter was determined during plaintiff's criminal action.

Plaintiff states that unnamed persons allowed Dexter City Police officers into the emergency room after the accident, even though Dexter City Police officers were not involved with his criminal investigation. Plaintiff believes that this was a violation of his HIPAA rights.[7]

Plaintiff states that an unnamed accident investigator took pictures of his arms after the accident without getting a warrant. He asserts that this investigator also asked him if he had

---

[6]To the extent plaintiff believes he was subject to excessive force, he would need to bring a separate lawsuit against a named defendant. The Court will not address the supposed excessive force allegations in the present lawsuit given that plaintiff has not identified a proper defendant in this matter.

[7]Courts have repeatedly held that an allegation violation of HIPAA does not create a private right of action. *See Adams v. Eureka Fire Prot. Dist.,* 352 F.App'x 137, 138-39 (8th Cir. 2009).

anything in his pockets, and when plaintiff took his truck keys out of his pockets, the investigator took the keys prior to reading him his rights.

Plaintiff complains that City of Bernie Police Officer, Josh Roberts, let Brant Bristow leave the scene of the accident and "swap vehicles." Plaintiff believes Mr. Bristow should not have been able to leave the scene. Plaintiff has not indicated the relevance of this issue.

Plaintiff objects to an unnamed officer with the Missouri State Police who allegedly released his truck to the insurance company before his attorney, John McMullan, could review it. He asserts that as a result, Brian Wicker, a tow truck driver, disconnected the battery on the truck which allegedly reset the computer. This caused data that was used at trial to be, according to plaintiff, "questionable." Plaintiff also objects to the data used from the truck because he states that his truck keys were taken by the police without his consent.[8]

## B. Allegations Relating to Plaintiff's Criminal Prosecution in Dunklin and Stoddard County Courts Between July of 2017 and October 2021

Plaintiff disagrees with several pretrial decisions made by Judges Joe Satterfield, Robert Mayer and John Speilman in his criminal action.[9] He states that his initial appearance was in front of Judge Speilman, who bound his case over in front of Judge Mayer. Plaintiff requested a change of venue in his criminal action to Butler County, Missouri, and Judge Mayer denied the motion. Instead, the matter was moved to Stoddard County, Missouri, but not until April of 2019. Plaintiff

---

[8]Evidentiary matters would have been reviewed during plaintiff's criminal action. As plaintiff was convicted and sentenced in his criminal case, he cannot now attack that conviction unless it has been expunged. *See* discussion of *Heck v. Humphrey, infra.*

[9]Plaintiff claims he wrote a letter to the Missouri Courts Commission on Retirement, Discipline and Removal relative to all the judges involved in his criminal case on June 23, 2021. James Smith, an individual at that office, wrote back to plaintiff on July 8, 2021, but only relative to his complaint against Judge Satterfield. Smith told plaintiff there was no legal basis to proceed on his complaint. Plaintiff wrote to Smith to ask if his complaint was shared with Judge Satterfield. Smith responded that "any correspondence about [his] complaint were private and denied to [him]." Plaintiff has not indicated what type of civil violation he believes Smith is liable for.

objects to the change of venue, as well as the change of judge which occurred at the time. His case was then assigned to Judge Joe Satterfield, who plaintiff claims was a friend of Judge Mayer.

Plaintiff states that prior to the case being transferred to Stoddard County, his attorney, John McMullan, and the Prosecutor Unknown McCormick, reached of plea deal of ten (10) years imprisonment. However, Judge Mayer declined to approve the deal, stating that he wanted the incoming prosecutor, Nicholas Jain, to hear and try plaintiff's case. Plaintiff believes that Judge Mayer and Nicholas Jain have a corrupt relationship. He points to the fact that Judge Mayer and Prosecutor Jain have adjacent offices in the Dunklin County Courthouse as evidence of this relationship.

Plaintiff also claims to have additional evidence of "corruption," including the fact that Prosecutor Nicholas Jain wanted to enhance the charges against him, so Judge Mayer sent plaintiff's case back to Judge Speilman. Plaintiff believes that because Judge Speilman issued the warrant for the blood draw in his initial case, as well as the warrant for his arrest, he should have had to recuse himself from presiding over the motion to enhance the charges.

Plaintiff complains that Judge Satterfield showed bias by denying almost all his pretrial motions. He also asserts that he showed bias by allowing Stoddard County Prosecutor Russell Oliver, who was not prosecuting the case against plaintiff, to sit in the courtroom during plaintiff's trial. Plaintiff states that Oliver sat in a witness box next to Judge Satterfield. Plaintiff also believes Oliver consulted with Prosecutor Jain during plaintiff's trial. Furthermore, plaintiff accuses Oliver, Jain and Judge Satterfield of loading the jury pool with persons that had previously been on juries who had found criminals guilty and/or who had children who went to school with Trooper Tim Pulley's children. Plaintiff does not indicate how Tim Pulley is connected to his case. He has not indicated that Pulley was at the scene of the accident or that Pulley was involved in his arrest.

Plaintiff argues that Judge Satterfield acted in a corrupt manner when he called plaintiff's sister and brother-in-law into his office prior to the trial and told them what they were able to testify to on the stand. He claims that they were threatened with jail time if they said something either Judge Satterfield or Prosecutor Jain disagreed with, and his sister was never able to testify. Plaintiff asserts that his attorney, John McMullan, failed to object to Judge Satterfield's inappropriate conduct.

Plaintiff believes that Judge Satterfield and Prosecutor Jain had too close a working relationship. He complains that Prosecutor Jain was allowed to use leading questions with his witnesses while plaintiff's witnesses were not allowed the use of leading questions. Plaintiff also complains that Prosecutor Jain enhanced the Victim Impact Statements to influence the jury. Plaintiff also asserts that Judge Satterfield allowed the prosecution witnesses to change their stories from the testimony given in their depositions. Plaintiff has not provided examples of this in his complaint. His allegations are entirely conclusory.

Plaintiff accuses Trooper Tim Pulley of having an improper conversation with one of the jurors in his criminal trial, Kelli Asher. He says that Judge Satterfield denied his requests for a mistrial. Plaintiff does not indicate what he believes Pulley was discussing with Kelli Asher. Plaintiff accuses Pulley of having free reign during trial, stating that Judge Satterfield allowed him to speak directly to jurors when he was on the stand during trial. Plaintiff fails to state what Pulley testified to at trial. Plaintiff accuses a victim's family member in this case, Justin Claibourn, of speaking to jurors about how much he loved his ex-wife. Plaintiff states that Claibourn should have known that this practice was forbidden during a trial.

Plaintiff asserts that during his trial, Judge Mayer was present at the Stoddard County Courthouse and seen coming out of the jury room while jurors were present. He also claims that

10

Judge Mayer was seen going back and forth to Judge Satterfield's office during trial breaks. Plaintiff believes Judge Mayer should have been kept from speaking to Judge Satterfield about his trial.

Plaintiff states that Prosecutor Jain asked Judge Satterfield for time to investigate whether plaintiff had prior DUIs before he was sentenced. This allegedly caused a delay in sentencing of two months. He further objects to Judge Satterfield's remarks at sentencing stating that plaintiff had shown no remorse for the families of those he had killed.

Plaintiff alleges that Prosecutor Nicholas Jain was somehow biased and corrupt because at the same time as he was prosecuting him in his criminal case, Jain was defending himself on a Driving While Intoxicated (DWI) charge. Plaintiff believes Jain should not have been able to prosecute him while undergoing his own criminal proceeding.

Plaintiff accuses medical lab technician Dewayne Rhody of improperly testifying at trial to topics outside of his personal knowledge. He claims that he should not have testified that he drew both of plaintiff's blood samples because a female staff member at the hospital drew plaintiff's first blood sample. Similarly, plaintiff claims that Jeremy Jones, the crime lab supervisor, should not have been able to say with certainty at trial that the blood samples were his.

Plaintiff makes a plethora of complaints about his own attorney, John McMullan. He asserts that he wanted his attorney to motion for speedy trial, but he failed to do so. He states that McMullan failed to object at trial because he was afraid of harassment, was afraid of looking bad, did not believe plaintiff was paying him enough money, and thought plaintiff was guilty. Plaintiff also complains that he wanted to terminate McMullan's appointment but was told he would not be given appointed counsel if he did so. Plaintiff alleges that McMullan failed to timely depose witnesses, and as a result, they changed their stories after speaking to Prosecutor Jain and

11

investigators who worked for the prosecutor. Plaintiff also objects to McMullan's failure to confront Judges Satterfield and Mayer with plaintiff's complaint to the Missouri Courts Commission on Retirement, Discipline and Removal.

**C.  Allegations Relating to Alleged Civil Rights Violations at the Dunklin County and the Stoddard County Jails**

Plaintiff claims that when he was first incarcerated at Dunklin County Jail in July of 2017, he worked in the kitchen. He complains that he was made to work approximately sixteen (16) hour days without pay. He has failed to indicate, however, what exactly he did at the Dunklin County Jail, or how long he worked in the kitchen at the Jail. Plaintiff has also failed to indicate if he volunteered for the job in the kitchen, or if he received special treatment because of working at the Jail.

Plaintiff alleges that he was held with another inmate for several months in a one-man cell at the Dunklin County Jail. He complains that he had to sleep on a mat on the floor next to the toilet, even when his cellmate urinated on the floor next to him. He claims that when he asked for cleaning supplies to clean the floor, he was not provided the supplies right away. Plaintiff does not indicate how long it took to receive the cleaning supplies. However, from the facts in the complaint it appears that he received the supplies the next day.

Plaintiff also complains that he and other inmates suffered from spider bites at both the Dunklin County Jail and the Stoddard County Jail.[10] He asserts that the Stoddard County Jail was so crowded that often five inmates were in a two-man cell together. Additionally, there were not enough showers at Stoddard County Jail for everyone to use, so usually inmates were only allowed to shower approximately every four days. He asserts that showers at Stoddard County Jail had

---

[10]It is unclear from plaintiff's complaint plaintiff's dates of incarceration at the Dunklin County Jail and/or the Stoddard County Jail.

mold on the ceiling. Furthermore, at Dunklin County Jail, the shower curtains and ceilings were rarely cleaned, and some walls had mold on them. Plaintiff complains that he was held in a cell at Stoddard County Jail for forty-eight (48) hours that utilized a hole in the floor for a toilet.

Plaintiff also states that inmates at the Dunklin County Jail were charged for toiletries once per week. However, on occasion, cell searches occurred at the Jail and extra toiletries were taken from the cells and sold to other inmates at the Jail. The amounts paid for toiletries were not refunded to the inmates' accounts. He asserts that Stoddard County Jail did not provide inmates with any hygiene products, so if an inmate had no money in his account, he could not utilize cleaning products.

Plaintiff asserts that nurse Ashley Graham, the nurse in Dunklin County, stole commissary items from his cell on the date of one of the cell searches, including items such as bags of chips, peanut butter snack crackers and cookies. His requests for reimbursement were denied. Plaintiff claims that Graham, as well as janitor Orville Sipes, made comments about his criminal case at Dunklin County Jail in front of other inmates.

Plaintiff objects to inmate phone calls and visiting rooms being recorded at the Dunklin County and Stoddard County Jails. He believes that this allows judges and prosecutors access to inmate conversations.

### D. Plaintiff's Allegations of Deliberate Indifference to his Serious Medical Needs at both Dunklin County and Stoddard County Jails

Plaintiff makes the general allegation that he was denied proper medical treatment when he was incarcerated at Dunklin County Jail. However, plaintiff has failed to identify what his serious medical needs were during his time at both Jails.

He claims that when he arrived at the Dunklin County Jail, he had wounds on his arms that were "subject to bleeding," which appear to relate to having IVs removed at the hospital in July of 2017. He states that he was denied "clean bandages" for the wounds by nurse Ashley Graham.

He states that on an unnamed occasion, Graham failed to provide him a comparable medication at Dunklin County Jail when a medication he was taking was "pulled from the market." Instead, he was given an over-the-counter medication. And on another occasion, when he fell at the Dunklin County Jail on a puddle of water and allegedly hurt his shoulder, Graham placed him under observation for twenty-four (24) hours to see if he was faking his injury before transferring him to the Emergency Room in Hayti, Missouri. Plaintiff complains that he was billed by the hospital for his treatment, and that he was also billed by Dunklin County Jail for medical care when he saw the doctor at the Jail for treatment.

On an unidentified date, plaintiff claims he got sick at the Dunklin County Jail with a fever and chills. He claims an unnamed guard told him she spoke to a physician on the phone and came back with an antibiotic for him to take. A few days later, plaintiff developed a rash on his hands and feet, and the same guard again allegedly spoke to a physician and told plaintiff to take Benadryl. Plaintiff states that he is unsure if he was being treated by an actual physician or simply nurse Ashley Graham or a guard at the Dunklin County Jail.

Plaintiff states that he once filled out a medical request for an unnamed medical issue while he was at the Dunklin County Jail, but it was almost three months until he was seen by a doctor. Plaintiff fails to detail what his medical need was when he filled out the medical request.

Plaintiff complains that his sister had to both purchase and drive his psoriasis medication to both the Dunklin County Jail and the Stoddard Count Jail. He also complains that he was made to pay for his medications that he took while he was incarcerated at both Jails.

14

### E.  Plaintiff Fails to Make Allegations Against the Remaining Defendants

Plaintiff fails to set forth specific facts alleging civil rights violations against the following defendants: (1) Aaron Grainger; (2) James Smith; (3) Justin Claibourn; (4) Nicole Green; (5) Kelli Asher; (6) June Robinson; (7) Tayhlar Santana; (8) Brant Bristow; (9) Jesse Curtis; (10) Brian Wicker; (11) Bob Holder; and (12) Carl Heifner.

Several of the aforementioned defendants – Grainger, Smith, Green, Robinson, Curtis, Holder and Heifner - have no allegations made against them in plaintiff's complaint. Whereas other defendants – Claibourn, Asher, Santana, Bristow and Wicker – were not acting as state actors as described by plaintiff, in the events in the complaint and as such, cannot be held liable under 42 U.S.C. § 1983.

For relief in this action, plaintiff seeks damages.

### Severance of Plaintiff's Purported Unlawful Conditions of Confinement Claims and Deliberate Indifference to Serious Medical Needs Claims

As set forth above, plaintiff alleges an abundance of claims in this lawsuit, most of which are unrelated. "Unrelated claims against different defendants belong in different suits, ... [in part] to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Complaints with unrelated claims brought by prisoner plaintiffs against different defendants should be rejected, either by severing the action into separate lawsuits or by dismissing improperly joined defendants. *Id.; see also* Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3rd Cir. 2006); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988).

15

Federal Rule of Civil Procedure 21 permits severance of claims if they are improperly joined. The rule states, in pertinent part, that on motion or sua sponte, "the court may at any time, on just terms ... sever any claim against a party." Fed. R. Civ. P. 21. Severance is appropriate when the claims are "discrete and separate," each capable of resolution without dependence or effect on the other. *See Gaffney v. Riverboat Servs. of Ind., Inc.,* 451 F.3d 424, 442 (7th Cir. 2006) (citations omitted).

When determining whether to sever claims pursuant to Rule 21, district courts often consider (1) whether the issues sought to be severed are significantly different from one another and would require distinct evidentiary proof; (2) whether severance would promote judicial economy; and (3) whether either party will be unduly prejudiced by severance or its absence. *See Official Comm. of Unsecured Creditors v. Shapiro,* 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citation omitted).

Plaintiff's allegations relating to his purported unlawful conditions of confinement claims at both the Dunklin and Stoddard County Jails, as well as his deliberate indifference to his serious medical needs claims at the Jails are not based on the same transactions or occurrences as the rest of the claims in this lawsuit. For this reason, the Court will sever and dismiss these claims, without prejudice. If plaintiff wishes to file new actions concerning those claims he may do so. However, plaintiff must remember that his claims relating to Dunklin County Jail are separate and distinct from those relating to Stoddard County Jail. Moreover, his deliberate indifference to medical care claims are also separate and distinct from his conditions of confinement claims, as they relate to different defendants and different dates. *See* Fed. R. Civ. P. 18 and 20. Accordingly, these claims would need to be filed in separate lawsuits.

## Discussion

A review of plaintiff's allegations indicates that his remaining claims against defendants are subject to dismissal. Plaintiff's claims relating to events which occurred prior to October 17, 2019, are time-barred, and the Court need not address those claims as a result. Plaintiff's resultant claims, which are brought against defendants in their official capacities only, fail to state a claim upon which relief may be granted. Additionally, to the extent plaintiff is attacking his state court criminal conviction, his claims are barred by *Heck v. Humphrey,* 512 U.S. 477, 486-87 (1994), as there is no indication that his conviction has been overturned.

To the extent plaintiff is asserting claims for relief against the judges who presided over his criminal case, as well as prosecutor Nicholas Jain and/or Prosecutor Russell Oliver, those claims are barred by judicial and prosecutorial immunity. Plaintiff's claims against his defense counsel, John McMullan are also subject to dismissal.

### A. Plaintiff's Allegations Relating to Events Which Occurred Prior to October 17, 2019, Are Time-Barred

While there is no statute of limitations contained within 42 U.S.C. § 1983, the Supreme Court "has held that § 1983 claims accruing within a particular state should be governed by that state's statute of limitations governing personal-injury claims." *Walker v. Barrett*, 650 F.3d 1198, 1205 (8th Cir. 2011). *See also Anderson v. City of Minneapolis*, 934 F.3d 876, 880 (8th Cir. 2019) (determining that statute of limitations for § 1983 case arising in Minnesota "comes from the state's personal injury statute"). Thus, for cases arising in Missouri, the five-year statute of limitations for personal injury actions found in Mo. Rev. Stat. § 516.120(4) applies to § 1983 actions. *Sulik v. Taney Cty., Mo.,* 393 F.3d 765, 767 (8th Cir. 2005). While the statute of limitations is an affirmative defense, a district court may properly dismiss an in forma pauperis complaint

under 28 U.S.C. § 1915 when it is apparent the statute of limitations has expired. *Myers v. Vogal*, 960 F.2d 750, 751 (8th Cir. 1992).

Plaintiff did not sign and date the instant complaint, nor did he indicate when he placed the complaint in the prison mail system at ERDCC. Plaintiff's motion to proceed in forma pauperis is signed and dated October 17, 2024, and the Court received plaintiff's complaint on that date. Accordingly, any claims brought by plaintiff arising five (5) years prior to this date, or before October 17, 2019, are time-barred.

Because plaintiff has failed to articulate in his complaint when the majority of his claims arose, the Court cannot state with certainty which of the claims are time-barred. However, it is clear that many of the claims in this action arose prior to October 17, 2019, or five years prior to the filing of the present lawsuit. For example, the claims relating to plaintiff's arrest arose in July of 2017, as did many of his state pretrial criminal matters, which occurred prior to October of 2019. These claims are subject to dismissal as time-barred.

**B. Plaintiff's Claims Attacking his Criminal Conviction Are Barred by *Heck v. Humphrey***

The Supreme Court has held that a prisoner may not recover damages in a § 1983 suit where the judgment would necessarily imply the invalidity of his convictions, sentences, or continued imprisonment unless the convictions or sentences have been reversed, expunged, or called into question by issuance of a writ of habeas corpus. *Heck,* 512 U.S. at 486-87; *Schafer v. Moore,* 46 F.3d 43, 45 (8th Cir. 1995); *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (applying rule in § 1983 suit seeking declaratory relief).

To the extent that plaintiff seeks a ruling that his state court sentence is invalid, and he should be released, such a § 1983 claim is not cognizable here. Plaintiff seems to be asserting that the allegedly unconstitutional acts of several of the defendants led to his conviction. Plaintiff does

18

not aver, nor does it appear, that his conviction or sentence has been reversed, expunged, or called into question by the issuance of a writ of habeas corpus. Therefore, the Court concludes that plaintiff's claims attacking his criminal conviction are barred by *Heck v. Humphrey.*

### C. Plaintiff's Claims Against Defendants in their Official Capacities Are Subject to Dismissal

Even if most of plaintiff's claims were not time-barred, they would be subject to dismissal. For example, many of plaintiff's claims are against county or municipal employees. Because plaintiff failed to specify the capacity in which he sues the county or municipal employees, the Court interprets the complaint as including only official capacity claims against those defendants. *See Egerdahl v. Hibbing Community College,* 72 F.3d 615, 619 (8th Cir. 1995) ("If a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, [courts] interpret the complaint as including only official-capacity claims.").

A suit brought against a government official in his or her official capacity pursuant to § 1983 is not a suit against the official, but rather a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, an official-capacity suit generally represents a "way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, the real party in interest in an official-capacity suit is not the named official, but the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In this case, plaintiff brings claims against Dunklin County employees as well as Stoddard County employees. As such, plaintiff's official capacity claims against these defendants must be treated as claims against the governmental entities that employ them, Dunklin County and Stoddard County.[11]

---

[11]Plaintiff also brings claims against employees of the State of Missouri. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).

In *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978), the Supreme Court held that a municipality or local governing body can be directly liable under § 1983. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

Plaintiff fails to make any assertions against either Dunklin County or Stoddard County in his complaint, and no allegations that could be construed as *Monell* claims. There are no claims of a constitutional violation by either Dunklin County or Stoddard County resulting from any policy, custom, or deliberately indifferent failure to train or supervise. *See Monell*, 436 U.S. at 690–92 (describing a municipal liability claim). Merely listing a defendant's name in a case caption is insufficient to support a claim against the defendant. *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (citing *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (per curiam) (noting that court properly dismissed pro se complaint that was silent as to defendant except for his name appearing in the caption)). As such, plaintiff's official-capacity claims against defendant police officers fail to state a claim for relief and must be dismissed under 28 U.S.C. § 1915(e)(2)(B).

Furthermore, to the extent plaintiff is attempting to pursue claims against either the Dunklin County Jail and/or the Stoddard County Jail, such claims are also subject to dismissal. Municipal departments like jails, sheriff's offices and police departments are not legal entities that can be sued under 42 U.S.C. § 1983. *See Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992). Accordingly, plaintiff cannot sustain a claim against these entities.

---

However, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will,* 491 U.S. at 71. Thus, plaintiff's claims against the State employees are subject to dismissal.

**D.  Plaintiff's Failure to Make Allegations Against Several of the Defendants is Fatal to His Claims for Relief Against these Defendants.**

Liability in a 42 U.S.C. § 1983 case is personal. *See Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights); and *Love v. Schoffman*, 142 Fed. Appx. 278, 279 (8th Cir. 2003) (affirming pre-service dismissal under 28 U.S.C. § 1915 because the complaint, among other infirmities, "did not specify which of the many named defendants was responsible for each of the alleged harms"). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

As noted above, plaintiff fails to make specific allegations against several defendants in this action including: Grainger, Smith, Green, Robinson, Curtis, Holder and Heifner. Similarly, other defendants – Claibourn, Asher, Santana, Bristow and Wicker – were not acting as state actors as described by plaintiff in the events in the complaint, and as such, cannot be held liable under 42 U.S.C. § 1983.

**E. Plaintiff's Allegations Against Judges Satterfield, Mayer and Speilman, as well as Prosecutors Nicholas Jain and Russell Oliver, Fail to State a Claim.**

Plaintiff's conclusory allegations against Judges Satterfield, Mayer and Speilman for allegedly acting biased and corrupt, are subject to dismissal, as judges are entitled to judicial immunity.

Judicial immunity provides judges with immunity from suit, allowing them to exercise the authority with which they are vested, and to act upon their own convictions. *See Hamilton v. City of Hayti, Missouri*, 948 F.3d 921, 925 (8th Cir. 2020). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). This immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice"). Moreover, "a judge will not be deprived of his immunity because the action he took was in error or was in excess of his authority." *Justice Network, Inc. v. Craighead Cty.,* 931 F.3d 753, 760 (8th Cir. 2019). As such, plaintiff's allegations against Judges Satterfield, Mayer and Speilman are subject to dismissal.

Similarly, plaintiff's allegations against Prosecutor Nicholas Jain and Prosecutor Russell Oliver are also subject to dismissal. Prosecutors are absolutely immune from civil rights claims based on actions taken within the scope of their duties in initiating a criminal prosecution and presenting the state's case at trial. *Imbler v. Pachtman,* 424 U.S. 409, 430–31 (1976). "Absolute immunity covers prosecutorial functions such as the initiation and pursuit of a criminal prosecution, the presentation of the state's case at trial, and other conduct that is intimately associated with the judicial process." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). *See Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (same).

In this case, plaintiff has not made specific claims of bias or corruption relating to Prosecutors Jain or Oliver. His claims are merely speculative and conclusory. A prosecutor is immune from suit even if he knowingly presents false, misleading, or perjured testimony, or withholds or suppresses exculpatory evidence, and plaintiff has not alleged that Jain went so far as to do so in this case. *Reasonover v. St. Louis County, Mo.,* 447 F.3d 569, 580 (8th Cir. 2006). Accordingly, plaintiff's allegations against Jain and Oliver are subject to dismissal.

**F. Plaintiff's Claims Against his Criminal Attorney Are Subject to Dismissal.**

Plaintiff accuses his criminal attorney, John McMullan, of failing to properly represent him in his prior criminal action. Because plaintiff's defense attorney did not act under color of state law, he cannot be liable for any violation of plaintiff's constitutional rights under § 1983.

"The essential elements of a [42 U.S.C.] § 1983 claim are: (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Green v. Byrd*, 972 F.3d 997, 1000 (8th Cir. 2020). However, a defense attorney, whether appointed or retained, does not act under color of state law, and thus cannot be liable for the alleged deprivation of constitutional rights under 42 U.S.C. § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Myers,* 960 F.2d at 750 (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"). For the aforementioned reasons, plaintiff's allegations against John McMullan are subject to dismissal.

**Conclusion**

Having thoroughly reviewed and liberally construed the complaint and the supplemental documents, the Court concludes that it is subject to dismissal because it is frivolous and/or fails to state a claim upon which relief may be granted. The Court can envision no amendment to the complaint that would cause it to state a plausible claim for relief. The Court will therefore dismiss this action at this time, without prejudice, and will decline to exercise supplemental jurisdiction over plaintiff's state law claims, such as those he wishes to bring under the Missouri Constitution and/or any Missouri State law. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Crest Construction II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (where all federal claims have been dismissed, district court's decision to decline supplemental jurisdiction over state claims is "purely discretionary").

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that, within twenty-one (21) days of the date of this order, Plaintiff must pay an initial filing fee of $37.58. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's claims of unlawful conditions of confinement and deliberate indifference to his serious medical needs are **SEVERED AND DISMISSED** without prejudice. *See* Fed. R. Civ. P. 21.

      **IT IS FURTHER ORDERED** that all remaining federal claims in this action are **DISMISSED** without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

      **IT IS FURTHER ORDERED** that any state law claims brought by plaintiff in this action are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1367(c).

      A separate Order of Dismissal shall accompany this Memorandum and Order.

      Dated this 22nd day of November, 2024.


                                HENRY EDWARD AUTREY
                            UNITED STATES DISTRICT JUDGE